# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **EARL VANTREASE, JR. # 289250,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 3:14-00728** |
| **v.** | ) | **Judge Sharp/Brown** |
| | ) | |
| **SHARON TAYLOR,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

The Magistrate Judge **RECOMMENDS** for the reasons explained below that:

1) the requirement in the order of referral (Doc. 11) to conduct an evidentiary hearing be **RESCINDED** because an evidentiary hearing is unnecessary;

2) respondent's motion to dismiss (Doc. 6) be **GRANTED**;

3) petitioner's amended petition under 28 U.S.C. § 2254 (Doc. 70) be **DENIED**;

4) this action be **DISMISSED WITH PREJUDICE**;

5) acceptance and adoption of this R&R constitute the **FINAL JUDGMENT** in this action;

6) any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3);

7 should the petitioner file a timely notice of appeal, that such notice be docketed as both a notice of appeal and application for a certificate of appealability (COA), 28 U.S.C. § 2253(c); Rule 22(b), Fed. R. App. P.; *see Slack v. McDaniel*, 529 U.S. 473, 483 (2000), which **SHOULD NOT ISSUE** because jurists of reason would not debate whether the district court was correct in its procedural ruling, *see Castro v. United States of America*, 310 F.3d 900, 901-02 (6th Cir. 2002)(citing *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997));

8) any pending motions be **TERMINATED AS MOOT**.

# I. BACKGROUND

## A. Statement of the Case

Petitioner, proceeding *pro se* and *informa pauperis*, was a prisoner at the Northeast Correctional Complex (NECX) in Mountain City, Tennessee when he brought this action on March 7, 2014 seeking federal *habeas* relief under 28 U.S.C. § 2254.[1]  (Doc. 1)  Petitioner named Warden Sharon Taylor as the respondent.  (Doc. 1, p. 1 of 91)[2]

Respondent filed a motion to dismiss, memorandum of law, and supporting documents on April 15, 2014.  (Docs. 6-8)  Respondent argued that the petition should be dismissed as time barred under 28 U.S.C. § 2244(d)(1).  (Doc. 7)  Petitioner filed a response on April 25, 2014 in opposition to respondent's motion to dismiss.  (Doc. 9)

The District Judge referred this matter to the Magistrate Judge on July 17, 2014 to conduct an evidentiary hearing to: 1) determine whether the petition was timely and, if not, to determine whether equitable tolling of the 1-year limitations period (the limitations period) under § 2254 would be appropriate; 2) recommend the proper disposition of respondent's motion to dismiss.  (Doc. 11) The Magistrate Judge was further instructed "to hold any other proceedings that might be needed to ascertain the timeliness of the instant action."  (Doc. 11)

The Magistrate Judge instructed the Federal Public Defender's Office to appoint counsel on July 30, 2014.  (Doc. 16)  Assistant Federal Public Defender (AFPD)  Ronald Small filed a notice

---

[1]  The record shows that petitioner filed his petition on March 12, 2014.  However, the envelope in which petitioner mailed his petition to the district court is stamped as having been received by the NECX mail room on March 7, 2014.  (Doc. 1-6)  Under the mailbox rule, March 7, 2014 is the date that petitioner is deemed to have filed his petition. *See Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002)(citing *Houston v. Lack* 487 U.S. 266, 270 (1988)(a *pro se* prisoner filing is deemed filed on the date that the filing is turned over to prison officials for transmittal to the court.)).

[2]  The exhibits filed by the parties have not been paginated progressively as required by LR7.03(a), Local Rules of Court.  Therefore, the page numbers in the documents to which reference is made herein are to those generated by the court's CMECF system.

of appearance on petitioner's behalf on August 1, 2014. (Doc. 19)

On October 8, 2014, the Magistrate Judge entered an order scheduling a telephone conference with the parties on October 21, 2014 regarding the instruction in the order of referral to conduct an evidentiary hearing. (Doc. 24) Petitioner moved on October 10, 2014 to continue the telephone conference. (Doc. 25) Petitioner's motion was granted on October 15, 2014, and the telephone conference was rescheduled to November 6, 2014. (Doc. 26) The telephone conference was held on November 6, 2014 as scheduled, and an order entered the same day scheduling the evidentiary hearing for "30 days after discovery [is] completed or denied." (Doc. 27) On December 8, 2014, AFPD Small noticed the court of petitioner's "intent not to file any additional petition or other pleading and instead to proceed on [the] pro se petition and all claims related thereto." (Doc. 28)

The Magistrate Judge amended the November 6, 2014 scheduling order on January 8, 2015 following a telephone conference with the parties the day prior. (Docs. 29-30) Petitioner "advised" the Magistrate Judge during the January 7, 2015 telephone conference "that he would not be filing amended pleadings in this matter." (Doc. 30) The evidentiary hearing was scheduled for April 21, 2015. (Doc. 30)

A third telephone conference was held with the parties on April 9, 2015 (Doc. 31), pursuant to which the evidentiary hearing was reset to June 16, 2015 (Doc. 32), and a Rule 16 case management conference scheduled for the same day (Doc. 33). Thereafter, petitioner filed a 3-page motion to appointment new counsel on June 11, 2015 arguing, *inter alia*, that: 1) he and AFPD Small had been at odds regarding the authenticity of certain records that petitioner sought to introduce; 2) AFPD Small had threatened "to withdraw from further representation [i]f petitioner . . . testif[ied] [that] certain documents in the record [we]re authentic"; 3) AFPD Small had been

bribed by the state to reject all witnesses and evidence. (Doc. 36)[3] On June 15, 2015, AFPD Small moved to continue the evidentiary hearing for sixty (60) days to give the court time to consider petitioner's motion. (Doc. 37)

The scheduled June 16, 2015 evidentiary hearing gave way to an *in camera* review of plaintiff's motion to appoint new counsel. (Doc. 42) AFPD Small did not oppose the motion, arguing that he was ethically obligated not to introduce documentary evidence provided by petitioner that he thought to be fraudulent. The Magistrate Judge granted petitioner's motion for appointment of new counsel on June 17, 2015, and continued the evidentiary hearing until September 28, 2015. (Doc. 39) Attorneys Michael Terry and Stephanie Gore filed notices of appearance on petitioner's behalf on June 29, 2015. (Docs. 40-41)

The Magistrate Judge entered an order on August 17, 2015 noting that "analysis of the record and opinions of the Tennessee Court of Criminal Appeals [CCA] is that the petition is untimely. Absent evidence to the contrary, the only question is whether the limitations period should be equitably tolled." (Doc. 43) The Magistrate Judge directed respondent to file a written brief by September 9, 2015 to show "why equitable tolling is not appropriate in this case, including analysis of factual innocence versus legal insufficiency," and directed petitioner to respond not later than September 23, 2015. (Doc. 43)

Petitioner filed a motion through counsel on September 1, 2015 to continue the evidentiary hearing and to amend the scheduling order. (Doc. 45) In that motion, new counsel made the following argument:

> On December 8, 2014, petitioner's counsel (FPD) filed a notice of intent to proceed on petitioner's pro se petition alleging the petition 'adequately sets forth his claims for relief' and that no other

---

[3] Unnecessary capitalization has been omitted in those instances where the pleadings are quoted.

pleadings would be filed on petitioner's behalf (Docket No. 28). Petitioner did not agree, and filed a pro se motion for appointment of new counsel (Docket No. 36)  Petitioner intends to file an amended petition.

(Doc. 45, ¶ 4, pp. 1-2 of 4)  In an order dated September 3, 2015, the Magistrate Judge noted:

> It is now some 17 months since the original petition was filed and 16 months since the motion to dismiss was filed . . . [and] . . . [w]e still do not have a final petition.  Rather than continuing the case indefinitely the Magistrate Judge may well administratively close this case until the Petitioner files a motion to reopen and attaches to that motion an actual amended petition.  In view of the statement by the Petitioner that he intends to file an amended petition, it would appear that the Magistrate Judge would also terminate the current motion to dismiss without prejudice to being refiled once an actual amended petition is filed.

(Doc. 47)  Petitioner's September 1, 2015 motion was granted on September 14, 2015, and the case was ordered closed administratively.  (Doc. 49)

Petitioner filed a 9-page motion under seal on April 11, 2016 seeking appointment of new counsel, and an *in camera* hearing on his motion.  (Doc. 54)  The Magistrate Judge directed respondent to file a response within 14 days, and noted the following with respect to petitioner's repeated request for new counsel:

> The Petitioner is cautioned that he is not advancing his case by continually finding fault with counsel appointed for him and accusing them of dishonest and bribery.  If the Petitioner wishes to represent himself he may certainly do so, but he cannot have it both ways.  The P[etitioner] stated in his motion he could have hired an attorney.  If the P[etitioner] wants to hire his own attorney at his expense he may do so at any time.

(Doc. 55)  The Magistrate Judge granted petitioner's April 11, 2016 motion on May 9, 2016, and set a *in camera* hearing on petitioner's request to appoint new counsel for June 15, 2016, making the following related observations pertaining to petitioner's request:

> The Petitioner has gone through a series of attorneys at the state level

and is now attempting to go to a third attorney in this proceeding. Unfortunately, just as the Magistrate Judge predicted at the June 16, 2015[] hearing (Docket Entry 42) the Petitioner is back again with essentially the same complaint against Mr. Terry as he had against Mr. Small. Attorneys have ethical obligations in what they can and cannot do and no client can require an attorney to do something the attorney believes to be unethical.

. . .

Quite frankly, the Magistrate Judge has little confidence that the appointment of a third attorney in this case would produce a different result. The Petitioner does not have a right to unlimited attorneys and he does not have a right to require an attorney to do any particular act if the attorney has good reasons for not doing so.

(Doc. 59)

The June 15, 2016 hearing was held as scheduled. Thereafter, on June 17, 2016, the Magistrate Judge ordered the case restored to the active docket, granted petitioner's motion to relieve counsel, denied petitioner's motion for appointment of new counsel, ordered petitioner to proceed *pro se* with assistance of appointed elbow counsel, and received petitioner's motion to amended his *habeas* petition.[4] (Doc. 64) Attorney G. Kerry Haymaker filed a notice of appearance on June 20, 2016 as petitioner's elbow counsel. (Doc. 66)

Respondent filed a response to petitioner's motion to amend (Doc. 68), following which the Magistrate Judge granted petitioner's motion to amend on June 28, 2016 (Doc. 69). Petitioner's amended petition and supporting memorandum were filed that same day. (Docs. 70-71) Petitioner presented the following issues in his amended petition: 1) the vehicle stop that led to his arrest and conviction was not supported by probable cause (Doc. 71, pp. 13-20 of 56); 2) the identification procedure that led to his arrest and conviction was overly prejudicial (Doc. 71, pp. 21-28 of 56); 3)

---

[4] The Magistrate Judge also noted in his June 17, 2016 order that plaintiff had been transferred to the Whiteville Correctional Facility (Whiteville) in Whiteville, Tennessee. (Doc. 64, p. 1) The action against Warden Taylor was terminated on June 28, 2016, and Tammy Ford, Warden at Whiteville, was substituted.

he was denied his right to present a defense at trial (Doc. 71, pp. 29-31 of 56); 4) ineffective

assistance of trial counsel (Doc. 71, pp. 32-35 of 56); 5) his sentence was enhanced based on facts

that were not before the jury; (Doc. 71, pp. 36-43 of 56); 6) the judgment of conviction (judgment)

and order to issue *capias* were void (Doc. 71, pp. 44-50 of 56); 7) he was denied jail credits in

violation of his due process rights (Doc. 71, pp. 51-54 of 56); 8) his sentence was miscalculated in

violation of due process rights (Doc. 71, pp. 55-56 of 56). Petitioner also wrote the following in

response to the query in the petition regarding the question of timeliness:

> This petition is timely. However, if this court deems otherwise, it is
> due to state interference (the state courts failed to notify petition of
> the entry of its judgments). As such, petitioner would be entitled to
> equitable tolling of the statute of limitation (at least 274 days of
> AEDPA's 1-year deadline). Moreover, grounds 1 thru 4 are claims
> of actual innocence, while grounds 5, 6, and 8 have no statute of
> limitation in Tennessee. So although 274 days should be equitably
> tolled, the petition is timely (and would be timely) even if equitable
> tolling were not granted.

(Doc. 70, ¶ 18, p. 14)

Respondent filed a response to the amended petition on July 15, 2016, in which she argued

that the petition was not timely, and that petitioner had failed to exhaust his claims in state court

prior to raising them in the instant action. (Doc. 74) Petitioner filed a traverse on August 18, 2016.

(Doc. 75) This matter is now properly before the court.

### B. Statement of the Facts

The Putnam County Grand Jury indicted petitioner on December 16, 2002 on one count of

aggravated robbery in violation of Tenn. Code. Ann. § 39-13-402.[5] (Doc. 1-2, p. 22 of 138)

Petitioner was tried and convicted by a jury on April 24, 2003 before Judge Leon Burns in the

---

[5] Petitioner also was tried and convicted at the same time of assuming a false identity with the intent to injure another in violation of Tenn. Code Ann. § 39-16-301. However, the petition before this court pertains solely to petitioner's conviction and sentence for aggravated robbery.

Criminal Court for Putnam County in Cookeville, Tennessee, criminal case no. 02-0666. (Docs. 1-2, pp. 30-86 of 138; 1-3, pp. 1-23 of 101; 8-6, pp. 83-145 of 145; 8-7, pp. 5-77 of 116)[6] A sentencing hearing was held on July 25, 2003. (Doc. 1-3, pp. 38-58 of 101) Judge Burns sentenced petitioner to 16 years in the Tennessee Department of Correction (TDOC) to be served at 35 percent as a range II, multiple offender. (Doc. 1-3, pp. 50-51 of 101) The sentence was ordered served consecutive to sentences for previous convictions for which petitioner was incarcerated in TDOC at the time of the sentencing hearing. (Doc. 1-3, pp. 50-51 of 101) Judge Burns informed petitioner of his appellate rights at the hearing. (Doc. 8-7, pp. 75-76 of 116)

At the sentencing hearing, petitioner attempted to file a *pro se* motion for a judgment of acquittal or, in the alternative, a motion for a new trial. (Doc. 1-3, pp. 52-54 of 101) Petitioner then sought to "fire" his attorney because counsel would not file the aforementioned motion which was based on an alleged "recently discovered" witness who would corroborate petitioner's alibi defense. (Doc. 1-3, pp. 52-55 of 101) Defense counsel stated that he "did not see any grounds in there that I, as his attorney, would argue." (Doc. 1-3, p. 52 of 101) The trail court permitted defense counsel to withdraw from his representation, filed petitioner's *pro se* motion as a one for a new trial, appointed new counsel, and agreed to schedule a hearing on the petitioner's motion for a new trial at a later date. (Doc. 1-3, pp. 55-57 of 101) Although the "Sentence-imposed date" on the judgment form was "07/25/2003," Judge Burns did not enter the order of judgment at the time.

A hearing was held on April 2, 2004 on petitioner's motion for a new trial in case no. 02-0666, following which the motion was denied on April 6, 2004. (Doc. 8-1, p. 61 of 102) Thereafter, petitioner signed a written waiver on May 4, 2004 of his right to appeal his conviction and sentence.

---

[6] There is not a complete transcript of the trial in the record. The record comprises portions of the transcript filed at various times by the parties.

(Doc. 8-1, p. 62 of 102)  Forty-eight days after he waived his right to appeal, petitioner was "released in error" from TDOC on June 21, 2004 based on time served in connection with other sentences that he was serving at the time.  (Doc. 1-1, p. 8 of 55)  The record suggests that petitioner was "released in error" because TDOC had not been provided a copy of the judgment in case no. 02-0666.  (Doc. 1-1, p. 7 of 55)

For reasons that are not clear, Judge Burns did not enter judgment in case 02-0666 until December 16, 2005, following which the clerk of court filed the order of judgment on December 20, 2005.  (Doc. 1-3, p. 60 of 101)  Judge Burns also entered an order for *capias* on December 16, 2005 to take petitioner back into custody to begin serving his sentence in case no. 02-0666.  (Doc. 1-3, p. 62 of 101)

Petitioner was returned to custody on December 30, 2005, and subsequently reincarcerated in TDOC.  (Doc. 1-1, p. 5 of 55)  Once back in custody, petitioner did not seek to appeal his conviction, having waived his right to do so more than 19 months earlier, nor did he seek to rescind that waiver.  Instead, petitioner filed a *pro se* motion for a reduction of sentence on April 18, 2006 in case no. 02-0666.  (Doc. 71-1, p. 10 of 57)  Judge Burns denied the motion on May 3, 2006.[7] (Doc. 71-1, p. 10 of 57)

Petitioner filed a *pro se* application for state *habeas* relief pertaining to case no. 02-0666 on July 31, 2006 (the first state *habe*), Hickman County Circuit Court, case no. 06-5053C.  (Docs. 1-1, p. 31 of 55; 1-3, p. 68 of 101; 8-1, pp. 7-39 of 102)  Petitioner raised the following grounds for relief in his first state *habe*: 1) judgment and sentencing were void because he was denied the right to counsel prior to judgment entering; 2) he was never presented with an information or indictment as

---

[7] Petitioner asserts in his traverse that he "learned about the judgment of conviction around May 31, 2006 (about 6-months after its entry) . . . ."  (Docs. 71, p. 3 of 56; 75, p. 5 of 24)

to the nature of the cause of action against him prior to judgment entering; 3) he was denied his right to trial prior to being convicted of an offense that had been reversed on post-conviction; 4) the proceedings surrounding the judgment and sentence violated his due process rights. (Doc. 8-1, pp. 19-34 of 102) On August 23, 2006, Judge Jeffery Bivins granted the State's motion to dismiss, ruling that petitioner "has failed to state a colorable claim for habeas corpus relief." (Doc. 1-1, p. 13 of 55)

On September 25, 2006, petitioner filed a motion to alter or amend judgment in case no. 06-5053C, as well as a notice of appeal. (Doc. 8-1, pp. 89-99 of 102) The first state *habeas* court took no action on petitioner's motion to alter or amend, and an appeal ensued. On October 9, 2007, the CCA initially affirmed the judgment of the first state *habeas* court. (Doc. 8-5, p. 2 of 7) Petitioner filed a *pro se* motion for a rehearing on October 18, 2007. (Doc. 8-4, pp. 2-5 of 22) The CCA granted petitioner's motion on December 14, 2007, subsequent to which it reversed the first state *habeas* court's decision, vacated its judgment, and remanded the matter for an evidentiary hearing on the merits.[8] (Doc. 8-5)

On remand, Judge Robbie Beal entered an order on April 25, 2008 ruling that petitioner stated a colorable post-conviction claim of ineffective assistance of counsel, and directed counsel to file an amended petition if necessary. (Doc. 1-1, pp. 21-23 of 55) After a lengthy delay, an evidentiary hearing was held in case no. 06-5053C before Circuit Court Judge Timothy Easter on November 21, 2011. (Docs. 1-1, pp. 31-32 of 55, 1-4, pp. 1-38 of 38) In his December 6, 2011 order granting the state's motion to dismiss, Judge Easter wrote: "The petitioner has failed to demonstrate that on the face of the judgment or record the convicting court was without jurisdiction or authority to sentence the petitioner, or that the petitioner's sentence has expired." (Doc. 1-1, pp.

---

[8] The CCA referred in its opinion to the questionable validity of evidence that petitioner had submitted.

Judge Easter specifically ruled at the hearing that Judge Burns "had jurisdiction" in petitioner's case, that any delay in entering judgment "constitute[d] . . . mere negligence,"[9] and that petitioner's sentence had not expired. (Doc. 1-4, pp. 33-36 of 38) Judge Easter determined further that the remaining grounds raised were "not appropriate for habeas corpus relief."[10] Petitioner did not appeal Judge Easter's ruling. (Doc. 1-4, p. 33 of 38)

Petitioner filed an application for state *habeas* corpus relief in the Wilson County Criminal Court on July 3, 2012 (the second state *habe*). (Doc. 71-1, p. 34 of 57) Petitioner's application was dismissed on July 11, 2012 for want of jurisdiction. (Doc. 71-1, p. 34 of 57)

Petitioner filed a third application for state *habeas* relief on July 26, 2012 in Hickman County Circuit, case no. 12-CV-43 (the third state *habe*). (Doc. 8-6, pp. 4-62 of 145) Petitioner raised the following grounds for relief: 1) the judgment was void due to an unlawful show-up identification; 2) the trial court denied him his right to present a witness in support of his defense; 3) Judge Burns acted without jurisdiction or authority to enter judgment in case no. 02-0666 on December 16, 2005 and the subsequent order of *capias*; 4) the trial court exceeded its authority by enhancing his sentence based on two factors not presented to the jury; 5) the judgment was void because he was not awarded pre-trial jail time; 6) he was denied due process because he was not permitted to raise his other claims in state *habeas* proceedings. (Doc. 8-10) Judge Beal granted the

---

[9] Under Tennessee law, "[t]he court may at any time correct clerical mistakes in judgments . . . and errors in the record arising from oversight or omission." Rule 36, Tenn. R. Crim. P. The Tennessee Supreme Court has characterized the failure to enter a judgment as a "technical" error, the solution for which is for the trial court to enter "a proper judgment order." *Taylor v. State*, M2012-01549-CCA-R3-PC, 2013 WL 2145776 *2 (Tenn. Crim. App., May 15, 2013)(internal citation omitted). "'[T]he effective date for entry of a judgment or order of sentence is the date of its filing with the court clerk after being signed by the Judge.'" *See State v. Vaughn*, 279 S.W.3d 584, 593 (Tenn. Crim. App., Nashville June 16, 2008)(quoting *State v. Kirby Stephens*, 264 S.W.3d 719, 727-29 (Tenn. Crim. App., Nashville, Sept. 21, 2007)).

[10] Judge Easter discussed at length the questionable validity of documents that petitioner had filed in his first state *habe*, but made no specific findings to that end. Instead he referred the matter back to Judge Burns. There is nothing in the record to indicate that Judge Burns took any action on the matter.

state's motion to dismiss on the grounds that petitioner "failed to meet the qualifications for relief under the habeas corpus statute." (Doc. 8-8, pp. 34, 36-42 of 52)

Petitioner filed a notice of appeal on October 11, 2012. (Docs. 1-1, p. 46 of 55; 8-8, pp. 2-52 of 52) Petitioner raised the same six grounds for relief on appeal that he did in the court below. (Doc. 8-10) The CCA determined that the third state *habeas* court did not err in dismissing his *habeas* application, and denied petitioner's request for appellate relief.[11] (Docs. 8-14, 8-15) Petitioner filed a motion to rehear on June 4, 2013, which the CCA denied the same day. (Doc. 1-1, p. 48 of 55) The Tennessee Supreme Court denied petitioner's application for permission to appeal on November 13, 2013. (Doc. 1-1, p. 49 of 55) Petitioner did not seek a writ of *certiorari* in the United States Supreme Court.

Petitioner also took the following actions both during and after his third state *habe*. Petitioner filed an inmate information request on July 25, 2012 while incarcerated in NECX seeking to obtain credit for time served, in response to which the records office advised petitioner that his time was correct. (Doc. 71-1, pp. 41-42 of 57) Petitioner petitioned TDOC on March 13, 2013 to issue a declaratory order that he be awarded credit for time served. (Doc. 71-1, pp. 45-47 of 57) TDOC denied the petition on July 15, 2013, noting, in part: "you were not in custody[] from June 22, 2004 - December 29, 2005; a total of 556 days of dead time (unserved time)." (Doc 71-1, p. 48 of 57) Petitioner filed a *pro se* motion on April 24, 2012 seeking to have the Putnam County Criminal Court correct an alleged clerical error in connection with his sentence. (Doc. 71-1, pp. 29-31 of 57) The court dismissed petitioner's motion on May 11, 2016, explaining that "pre-trial jail credit issues . . . must be taken up thorough the Administrative Procedure Act, T.C.A. § 4-5-101 et

_____

[11] The CCA again made lengthy references as to the questionable authenticity of documents that petitioner had submitted on appeal.

12

sq."[12]  (Doc. 71-1, p. 32 of 57)  Finally, petitioner filed a petition for declaratory judgment in the Davidson County Circuit Court on January 25, 2016 seeking credit for the time at issue.  (Doc. 71-1, pp. 51-53 of 57)  Petitioner was notified on February 24, 2016 that his petition was not filed because he had not paid his past fees, taxes, costs, and other expenses stemming from his prior litigation. (Doc. 71-1, p. 56-57 of 57)

## II.  STANDARD OF REVIEW

### A.  Motion to Dismiss Under Rule 12(b)(6)

In assessing a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the court is required to construe the pleadings in the light most favorable to the plaintiff, accept the plaintiff's factual allegations as true, and determine whether the pleadings "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich v. Waiting Angels Adoption Services, Inc.,* 668 F.3d 393, 403 (6th Cir. 2012)(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009)(internal quotation and citation omitted)).  A motion to dismiss under Rule 12(b)(6) "should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007)(quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)(internal citations omitted)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B.  Relief Under 28 U.S.C. § 2254

Petitions for federal *habeas* relief filed after April 24, 1996 are subject to the AEDPA.  *See*

_____

[12] Petitioner avers in his amended petition that he was aware of the Putnam County Criminal Court's decision on this matter.  (Doc. 70, ¶ 11(e), p. 5 of 15)

*Martin v. Mitchell*, 280 F.3d 594, 602 (6th Cir. 2002)(citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1977)). Title 28 U.S.C. § 2254, as amended by the AEDPA, provides the following with respect to granting *habeas* relief to prisoners who are in custody pursuant to a state court judgment:

>   (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>   (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" of clearly established federal law differs from an "incorrect application." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Under the former, "a federal *habeas corpus* court may grant relief if the state court identifies the governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The latter clause is satisfied when a state court "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or . . . decides a case differently than the Court . . . on a set of materially indistinguishable facts." *Id.* at 364-65.

Where state courts have made factual determinations regarding issues presented for federal *habeas* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-el v. Cockrell*, 537 U.S. 322, 324 (2003). Under the AEDPA, the purpose of federal *habeas* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### III. ANALYSIS

### A. Timeliness of Filing

Prisoners have one year under the AEDPA to file a petition for *habeas* relief which runs from the latest of four (4) circumstances, the relevant circumstance here being "the date on which the judgment became final by the conclusion of direct review . . . ." 28 U.S.C. §§ 2244(d)(1)(A); 2254 6(1). A conviction becomes "final" in the Sixth Circuit when the time to file an appeal expires and no appeal has been filed. *See Gillis v. U.S.*, 729 F.3d 641, 644 (6th Cir. 2013); *Eberle v. Warden, Mansfield Correctional Inst.*, 532 Fed.Appx. 605, 609 (6th Cir. 2013). As a general rule, judgment in a criminal case in Tennessee becomes "final" thirty days after entry of judgment unless a timely notice of appeal or a specified post-trial motion is filed. *See State v. Howard*, 2012 WL 3064653 at * 8 (Tenn. Crim App. 2012)(citing *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996)).

The limitations period is tolled by the amount of time that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2); *see Ege v. Yukins*, 485 F.3d 364, 371 (6th Cir. 2007). "The Supreme Court has defined 'properly filed' as 'when [an application's] delivery and acceptance are in compliance with the applicable laws and rules governing filings.'" *Williams v. Birkett*, 670 F.3d 729, 733 (6th Cir. 2012)(quoting *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)). Any lapse of time before a state application is "properly filed" will be counted against the limitations period. *See Bennett v. Artuz*, 199 F.3d 116, 122 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000). When the state proceedings that tolled the limitations period concludes, the limitations period resumes at the point where it was tolled rather than beginning anew. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004)(citing *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003)).

The limitations period is not jurisdictional. *See Day v. McDonough*, 547 U.S. 198, 205

(2006). Courts may review time-barred petitions for *habeas* relief under the doctrine of equitable tolling. A *habeas* petitioner is entitled to equitable tolling "only if he shows '**(1)** that he has been pursuing his rights diligently, **AND (2)** that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010)(citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)(bold and capitalization added)); *see Hall v. Warden, Lebanon Correctional Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011)(overruling the previous 5-part test set forth in *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001) based on *Holland*). A credible claim of "actual innocence" also may equitably toll the limitations period. *Bell v. Howes*, 703 F.3d 848, 854 (6th Cir. 2012)(citing *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 615 (1998)). "[A] credible claim of actual innocence is extremely rare," *Souter*, 395 F.3d at 600, and "should 'remain rare' and 'only be applied in the extraordinary case,'" *Souter*, 395 F.3d. at 590 (quoting *Schlup v. Delo*, 513 U.S. 298 (1995)). To demonstrate actual innocence, petitioner must show "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.

The first question analyzing the question of timeliness in this case is when did the limitations period begin to run. Tennessee courts have determined that "'the effective date for entry of a judgment or order of sentence is the date of its filing with the court clerk after being signed by the judge.'" *Vaughn*, 279 S.W.3d at 593 (quoting *Stephens*, 264 S.W.3d at 729). Here, the trail court's judgment became final on December 20, 2005 when the order of judgment was filed by the clerk of court. As noted above at pp. 8-9, petitioner waived his right to appeal, and there is nothing in the record that suggests he sought to rescind that waiver prior to being "released in error" from TDOC, or after he was reincarcerated. Consequently, the limitations period began to run 30 days after the

judgment was filed by the clerk of court, *i.e.*, on January 20, 2006.

The record shows that petitioner moved to reduce his sentence on April 18, 2006. Rule 35, Tenn. R. Crim. P. proves the following: "The trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked. No extensions shall be allowed on the time limitation. No other actions toll the running of this time limitation." A properly filed motion to reduce one's sentence tolls the period of limitations. *See Wall v. Kholi*, 562 U.S. 545 (2011).

The motion was timely under Rule 35. Therefore, the period of limitations was tolled during the pendency of the motion, of which 88 days had run between January 20, 2006 and the date petitioner filed his motion on April 18, 2006. Judge Burns denied the motion on May 3, 2006, and petitioner did not appeal. The limitations period was tolled for 45 days during this period, and began to run again on June 3, 2006, thirty days after petitioner could have appealed.[13]

Petitioner filed his first state *habe* on July 31, 2006, 58 days after he could have appealed Judge Burns' May 3, 2006 denial of his motion to reduce his sentence. A total of 146 days of the limitations period had run by the time petitioner filed his first state *habe*: 88 days + 58 days = 146 days. The first state *habe* ultimately was dismissed after lengthy delays on December 6, 2011, prior

---

[13] The amended petition contains the following instruction regarding the proceedings that he pursued in state court prior to seeking federal *habeas* relief: "[i]f you did not appeal to the highest state court having jurisdiction, explain why you did not." (Doc. 50, ¶ 11(e), p. 5 of 15) Petitioner responded: "The lower courts failed to notify petitioner of its judgments, except for the motion to correct clerical error, habeas denial in case no. 06-5053C & in Wilson County." (Doc. 70, ¶ 11(e), p. 5 of 15) One may infer from petitioner's failure to list Judge Burns' ruling in his response that he did not appeal that ruling because he was never advised of it. That said, there is nothing in the record that would lead a reasonable jurist to conclude that petitioner did not appeal Judge Burns' decision because he was unaware of the ruling. On the contrary, petitioner admits in the statement of facts in his memorandum in support of his amended petition that his attorney told him that the motion had been denied, but says nothing else about the proceeding. (Doc. 71, p. 3 of 56) In short, any claim that he did not know about the ruling in order to appeal is waived. *See United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)("Issues averted to in a perfunctory manner, unaccompanied by some effort at development argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving it to the court to . . . put flesh on its bones."; *see also Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1990)(the less stringent standard for *pro se* p[etitioners] does not compel the courts to conjure up unpled facts to support conclusory claims).

to which the limitations period had been tolled since July 31, 2006. As shown below at n. 14,[14] petitioner was aware of Judge Easter's ruling, and he chose not to appeal. The limitations period began to run again on January 6, 2012, 30 days after petitioner could have appealed the ruling of the first *habeas corpus* court, once again, even though he did not.

Petitioner filed an application for state *habeas* relief in the Wilson County Criminal Court on July 3, 2012. (Doc. 71-1, p. 34 of 57) Petitioner's application was dismissed on July 11, 2012 for want of jurisdiction. (Doc. 71-1, p. 34 of 57) As explained above at p. 15, this *habe* did not toll the limitations period because it was not filed properly.[15] *See Williams*, 670 F.3d at 733; *Bennett*, 199 F.3d at 122.

Petitioner filed his third state *habe* on July 26, 2012. Two hundred two (202) days of the limitations period had elapsed from January 6, 2012 to the date petitioner filed his second *habe*,

---

[14] As noted above at p. 17 n. 13, petitioner claimed that he did not appeal various state court proceedings because "[t]he lower courts failed to notify [him] of its judgments, except for the motion to correct clerical error, **habeas denial in case no. 06-5053C** & in Wilson County." (Doc. 70, ¶ 11(e), p. 5 of 15)(emphasis added) It may be inferred from petitioner's response above that he was aware of the proceedings in case no. 06-5053C, but elected not to appeal Judge Easter's ruling.

Notwithstanding the foregoing, petitioner has included a letter to his supporting memorandum dated April 24, 2012 purportedly requesting a copy of Judge Easter's order denying his request for state *habeas* relief in which letter petitioner also writes, "I do wish to appeal but cannot until I receive a copy of the 'Order of Dismissal.'" (Doc 71-1, p. 23 of 57) The petitioner's response in his petition conflicts with the letter in which he claimed that he wanted to appeal because he did not have Judge Easter's order of dismissal.

The Magistrate Judge assumes for the sake of discussion that petitioner wanted to appeal but did not because he had not received a copy of the order of dismissal." A plain reading of petitioner's amended petition, supporting memorandum, and traverse reveals that petitioner never actually argues in these proceedings that, but for the fact that he did not have a copy of Judge Easter's order of dismissal, he would have appealed, thereby tolling the limitations period. Consequently, for reasons previously explained above at p. 17 n. 13, this argument is waived.

In addition to the foregoing, petitioner could have late-filed a notice of appeal in case no. 06-5053C pursuant to Rule 4(a), Tenn. R. App. P. once he received a copy of Judge Easter's order. *See Aldridge v. Fortner*, M2009-00477-CCA-R3-HC, 2009 WL 3126260 * 5 (Nashville, Sep. 30, 2009). Rule 4(a) provides, in relevant part, that a notice of appeal "is not jurisdictional and the filing of such document may be waived in the interest of justice. The statement of facts in the memorandum in support of his amended petition shows that petitioner wanted to file a "delayed appeal." (Doc. 71, p. 7 of 56) The record also shows that he elected instead to file another state *habeas* application "[w]hen the Court did not respond within a reasonable time . . . ." (Doc. 71, p. 5 of 56) In short, the record shows that petitioner made a conscious decision not to file a delayed appeal in case no. 06-5053C.

[15] Petitioner avers in his amended petition that he was aware of the Wilson County Criminal Court's decision in this matter. (Doc. 70, ¶ 11(e), p. 5 of 15)

bringing the total number of days when the limitations period was not tolled to 348 days: 202 days + 146 days = 348 days. The Tennessee Supreme Court denied petitioner's application for permission to appeal on November 13, 2013, and petitioner did not seek a writ of *certiorari* in the United States Supreme Court.[16] Thus, the limitations period began to run again on February 12, 2014, 90 days after petitioner could have sought a writ of *certiorari* in the United States Supreme Court.

Given that 348 days of the limitations period had run prior to the AEDPA clock starting to tick again on February 12, 2014, petitioner would have had to file his petition for federal *habeas* relief not later than Monday, March 3, 2014 to avoid exceeding the limitations period.[17] As previously established, petitioner did not file his petition until March 7, 2014. In short, petitioner filed his petition 5 days late. The Magistrate Judge notes that petitioner did not raise his first and fourth ground for relief in this action until he filed his amended petition on June 28, 2016. Since these two claims do not relate back to the original petition, they were filed 2 years and 3-plus months after the period of limitations period ran. "An amended *habeas* petition does not relate back (and thereby escape AEDPA"s one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those in the original pleading." *See Mayle v. Felix*, 545 U.S. 644, 649 (2005); *Hill v. Mitchell*, 842 F.3d 910, 922 (6th Cir. 2016).

As previously noted above at pp. 12-13, petitioner filed several administrative actions connected with his sentence. The informal inmate information request filed by petitioner while

---

[16] Once again, case no. 12-CV-43 is not among those listed in the response in petitioner's amended petition, addressed above at p. 17 n. 13. However, petitioner writes in his traverse that, "[s]ince he "did not seek a writ of certiorari from the U.S. Supreme Court, the statute of limitations began to run (again) 90–days after the Tennessee Supreme Court Denied Review." (Doc. 75, p. 4 of 24) In short, petitioner admits tacitly that he decided not to take his appeal to the next level.

[17] The three hundred sixty-fifth day of the limitations period fell on Friday, February 28, 2014. Under Rule 6(a)(1)(C), Fed. R. Civ. P., petitioner had until the following Monday to file his petition.

incarcerated in NECX would not have tolled the limitations period. Petitioner's petition to TDOC to issue a declaratory order on March 13, 2013 would not have tolled the limitations period because it already was tolled by his third state *habe*. Petitioner's April 24, 2012 motion in the Putnam County Court Criminal Court was deemed improperly filed, so it would not have tolled the limitations period. Finally, petitioner's January 25, 2016 petition for declaratory judgment filed in the Davidson County Circuit Court was filed after the limitations period had run. In short, none of these administrative actions would have changed the fact that petitioner filed his petition for federal *habeas* relief five days after the limitations period had run. The next question is whether petitioner is entitled to equitable tolling.

## B. Equitable Tolling

### 1. Petitioner's Diligence in Pursuing His Rights

The record shows that petitioner was an aggressive *pro se* advocate for his rights in numerous proceedings in state court, including two *pro se* actions at the appellate level. Petitioner also demonstrated his commitment to advocating for his rights by the numerous civil actions that he filed in this court during the relevant time frame. *Vantrease v. John Does 1-14, et al.*, No. 2:03-00063 (M.D. Tenn., Feb. 18, 2004, Haynes, J.)(filed June 18, 2003); *Vantrease v. Putnam County Mayor, et al.*, No. 2:03-00074 (M.D. Tenn., Feb. 18, 2004, Haynes J.)(filed July 23, 2003); *Vantrease v. Brandon, et al.*, No. 1:04-00004 (M.D. Tenn., Jan. 14, 2004, (Higgins, J.)(filed January 14, 2004); *Vantrease v. Lunar et al.*, No. 3:06-00538 (M.D. Tenn., Sept. 17, 2007, Echols, J.)(filed May 25, 2006); *Vantrease v. Potter*, No. 3:06-000630 (M.D. Tenn., June 1, 2007, Trauger, J.)(filed June 23, 2006); *Vantrease v. Horst*, No. 2:06-00076 (M.D. Tenn., Sept. 26, 2006, Echols, J.)(Filed September 26, 2006); *State of Tennessee v. Vantrease*, No. 3:07-00207 (M.D. Tenn., Feb. 21, 2007, Echols, J.)(removal action brought by petitioner on February 21, 2007); *Vantrease v. Gibson, et al.*,

No. 2:07-00019 (M.D. Tenn., Apr. 26, 2007, Campbell, J.)(filed April 26, 2007); *Vantrease v. Department of Education, et al.*, No. 3:07-00446 (M.D. Tenn., Apr. 26, 2007, Campbell, J.)(filed April 26, 2007); *Vantrease v. Hester*, et al., No. 3:07-00518 (M.D. Tenn., May 16, 2007, Trauger, J.)(filed May 16, 2007). Petitioner filed each of the cases above during the pendency of the actions in state court pertaining to his aggravated robbery conviction. The seven cases beginning with *Vantrease v. Lunar, et al.* above all were filed between the time petitioner was returned to custody on December 30, 2005 and when the limitations period ran on February 28, 2014.[18]

Any reasonable person, especially one with petitioner's bent for litigation, would have or should have sought to obtain his release from TDOC the moment the cell door went "clunk" on December 30, 2005. Even if petitioner were unfamiliar with federal *habeas* filing requirements, the law is well established that "ignorance of the law alone is not sufficient to warrant equitable tolling." *Allen*, 366 F.3d at 403 (citing *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)). Had petitioner spent just a tiny fraction of the time seeing to his federal *habeas* rights that he spent engaging in recreational litigation, he would have become aware of the federal *habeas* filing requirements in the 8-plus years between the time he was taken back into custody and when the limitations period ran on March 3, 2014. The aforementioned actions shows that petitioner was not diligent in pursuing

---

[18] The Magistrate Judge notes for the record that petitioner was indicted on two counts of forging the signature of a United States District Judge less than two months after he was mistakenly discharged from TDOC. *U.S.A. v. Vantrease*, 3:09cr00182 (M.D. Tenn, July 25, 2011)(Campbell, J.) Petitioner pled guilty to count two of the indictment, he was sentenced to 12 months imprisonment to be served concurrently with his sentence in case no. 02-0666, and ordered to pay a $100.00 fine. *Vantrease*, 3:09cr00182 (Doc. 48).

      The Magistrate Judge also notes for the record that, at the June 16, 2015 evidentiary hearing – that turned into a hearing on petitioner's motion for new counsel (Doc. 42) – the majority of the testimony adduced pertained to petitioner's claim that AFPD Small would not file a version of the July 25, 2003 sentencing hearing transcript where Judge Burns purportedly ruled that, "[a]s far as your aggravated robbery conviction, it is hereby, set - aside and over turned [*sic*] for good cause" (Doc. 8-4, p. 16-18 of 22), one of the documents the validity of which the state courts questioned. Petitioner testified that he received this version of the sentencing hearing from defense counsel , but then stated: "But, of course, he's going to lie – he's going to testify that he didn't get it, that he didn't – that . . . it's not authentic." (Doc. 42, pp. 46-47 of 64) It is apparent to the Magistrate Judge from this and other testimony at the hearing that petitioner's attempt to have AFPD Small introduce this version of the sentencing hearing transcript into evidence was a bald-faced effort on his part to perpetrate fraud upon the court.

his rights.

Next, as previously noted above at p. 9 n. 7, petitioner admitted that he "learned about the judgment of conviction around May 31, 2006." Taking petitioner's recollection of "around May 31, 2006" as accurate, 131 days passed from January 20, 2006 when judgment became final for federal *habeas* purposes and May 31, 2006 when petitioner allegedly first learned of the judgment. Of those 131 days, 45 were tolled during the pendency of petitioner's motion to reduce his sentence, leaving 279 days – 9-plus months – for petitioner to learn about and comply with federal *habeas* filing requirements before the expiration of the limitations period on February 28, 2014. Petitioner's failure to file during the 279 days of the limitations period still remaining, especially given that the limitations period was tolled for much of the intervening 7 years 9-plus months, reflects an utter lack of diligence on petitioner's part.

## 2. Extraordinary Circumstances

Because petitioner was not diligent in pursuing his federal *habeas corpus* rights, he cannot satisfy both parts of the two-part test under *Holland*. Therefore, it is not necessary to address whether extraordinary circumstances prevented petitioner from timely filing his *habeas* petition. Nevertheless, the Magistrate Judge will do so for the sake of completeness.

Petitioner argues in his amended petition that "the state courts failed to notify [him] of the entry of its judgments." (Docs. 70, p 5 of 15; 71 pp. 9-11 of 56) These are the "extraordinary circumstance" on which petitioner relies in arguing that he is entitled to equitable tolling.

As shown above at pp. 17-19, petitioner waived his right to pursue a direct appeal, he decided not to appeal Judge Burns' denial of his motion for a reduction of sentence, he decided not to appeal Judge Easter's decision in the first state *habe*, he decided not to appeal the Wilson County Criminal Court's denial of the second *habe*, and decided not to seek a writ of *certiorari* in the United

States Supreme Court in his third state *habe*.  Petitioner's decision not to appeal in these instances does not constitute extraordinary circumstances.

### D.  Actual Innocence

Finally, petitioner asserts that "grounds [for relief] 1 thru 4 are claims of actual innocence." (Doc. 70, p. 14 of 15)  Petitioner identifies the following grounds for relief in the context of his "actual innocence" argument: 1) the vehicle stop in which he was apprehended following the crime for which he was tried and convicted was not supported by probable cause; 2) the process used to identify him was overly prejudicial; 3) he was denied the right to present a defense; 4) ineffective assistance of trial counsel.  (Docs. 70, pp. 5-10, 14 of 15; 71 pp. 13-35 of 56)

A plain reading of the arguments pertaining to these four claims shows that petitioner has not provided new *reliable* evidence that was not presented at trial.  On the contrary, petitioner merely rehashes evidence that was addressed at length during the March 7, 2003 suppression hearing (Doc. 1-2, pp. 30-86) on all but petitioner's ineffective assistance claim.  Consequently, petitioner fails to satisfy the most fundamental "actual innocence" standard.  Neither has petitioner provided legal argument that establishes by clear and convincing evidence that, had any of these claims been decided in his favor in the proceedings below, a reasonable jury to have found petitioner factually innocent of the offense.  In other words, for reasons previously explained at p. 17 n. 13, his claim of actual innocence also is waived.

### E.  Conclusion

Petitioner's petition for federal *habeas* relief should be denied as untimely for the reasons explained above.  Should petitioner file a notice of appeal, a COA should not issue because jurists of reason would not debate whether the district court was correct in its ruling.

### IV.  EXHAUSTION AND OTHER CONSIDERATIONS

Respondent also has moved to dismiss this action on the grounds that petitioner did not exhaust his grounds for relief prior to raising them in this action. The AEDPA places notable restrictions on a federal court's ability to grant *habeas* relief to state prisoners. Federal *habeas* courts may only consider claims that a *habeas* petitioner has previously raised before the state courts. *See* 28 U.S.C. § 2254(b); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002). The purpose of the exhaustion requirement is to "give the state courts an opportunity to act on [a petitioner's] claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

Claims that have not been raised in state court are deemed unexhausted, and ordinarily are dismissed without prejudice so that the *habeas* petitioner may pursue them in state court. *Alley*, 307 F.3d at 385. However, if the petitioner is barred from raising an unexhausted claim in state court due to a state procedural rule, then that claim is procedurally defaulted for purposes of federal *habeas* review. *See Coleman v. Thompson*, 501 U.S. 722 (1991). A claim also is procedurally defaulted where that claim was presented to the state court, but the court, rather than reaching the merits of the claim, relied on an independent and adequate state ground in deciding the issue, such as a state procedural rule barring review of the claim. *Coleman*, 501 U.S. at 722.

"[F]or a claim to be considered exhausted, the petitioner must have 'fairly presented' to the state courts the 'substance of his federal habeas corpus claim.'" *Alley*, 307 F.3d at 386 (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982))(internal citations omitted); *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal courts."). More particularly, to satisfy the federal *habeas* exhaustion requirement, the petitioner must fairly present the substance of each constitutional claim to the state courts as a federal constitutional claim.

*Anderson*, 459 U.S. at 6; *Picard v. Connor*, 404 U.S. 270, 275 (1971).

If a claim is procedurally defaulted, then federal *habeas* review is prohibited unless the petitioner demonstrates both "cause" <u>and</u> "prejudice" for his failure to raise the claim in state court while state court remedies were available, or that a miscarriage of justice will result if the claim is not reviewed. *Alley*, 307 F.3d at 386; *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable," constitutes "cause" under this standard. *Murray*, 477 U.S. at 488 (citations omitted); *see also Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002)("Cause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel."). To show "prejudice," default of the claim must not merely have created a possibility of prejudice to the defendant, it must have "worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison*, 291 F.3d at 388 (citing *United States v. Frady*, 456 U.S. 152, 170-171 (1982)). Finally, to demonstrate a "fundamental miscarriage of justice," a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who actually is innocent. *Murray*, 477 U.S. at 496.

### 1. Vehicle Stop Not Supported by
### Probable Cause
### (Doc. 71, pp. 13-21 of 56)

Petitioner alleges that the vehicle stop that lead to his arrest and subsequent conviction was unconstitutional. (Doc. 71, pp. 13-21 of 56) The record shows that petitioner did not raise this claim in any state court prior to raising it in the instant action. Not only is this claim unexhausted, it now is procedurally defaulted as well.

Petitioner argues that he was denied a direct appeal, and that denial of his right to appeal was the cause for his having not raised this claim in state court. However, as previously established above at pp. 8-9, petitioner was not denied his right to appeal – he waived it on May 4, 2004. Moreover, as previously established above at p. 9, petitioner did not seek to rescind that waiver between May 4, 2004 and June 21, 2004 when he was mistakenly released from custody, nor did he seek to do so after he was returned to custody on December 30, 2005. Defense counsel also argued the vehicle stop at length during the March 7, 2003 suppression hearing. (Doc. 1-2, pp. 30-86 of 138) Given these facts, petitioner cannot show that his failure to appeal this claim was due to factors external to the defense, or interference by state officials. Because petitioner cannot establish the first half of the two-part cause-and-prejudice test, it is unnecessary to address the prejudice half of test.

Petitioner asserts in his traverse that failure to remand his case for retrial on this ground would constitute a fundamental miscarriage of justice, because "the evidence is so convincing, 'it is more likely than not that no reasonable juror would have convicted him.'" (Doc. 75, p. 17 of 24) Apart from this naked assertion, petitioner makes no effort to explain why the circumstances of the vehicle stop would establish that he was *actually innocent* of the offense. For reasons previously

explained above at p. 17 n. 13, this argument is waived.[19]  *See Stewart*, 628 F.3d 256; *Wells*, 891 F.2d at 594.  Because petitioner has failed to demonstrate actual innocence by clear and convincing evidence, he fails to show that a fundamental miscarriage of justice would occur were the court not to review this claim.

This claim should be denied for the reasons explained above.  Should petitioner file a notice of appeal as to this claim, a COA should not issue because jurists of reason would not debate whether the district court was correct in its ruling.

## 2.  Overly Prejudicial Identification Procedure
### (Doc. 71, pp. 21-28 of 56)

Petitioner asserts that the identification process that led to his arrest and conviction was unconstitutional.  (Doc. 71, pp. 21-28 of 56)  Petitioner raised this issue in his third *habe*.  (Docs. 8-6, pp. 31-37 of 145; 8-10, pp. 24-31 of 69)

As an initial matter, the Magistrate Judge notes that "'the grounds upon which [state] habeas corpus relief will be granted [in Tennessee] are narrow.'"  *Hickman v. State*, 153 S.W.3d 16, 20 (Tenn. 2004)(*Dixon v. Holland*, 70 S.W.3d 33, 36 (Tenn. 2002)).  State "[h]abeas corpus is a vehicle for attacking a judgment that is void on its face."  *Hickman*, 153 S.W.3d at 20 (citing *State v. Ritchie*, 20 S.W.3d 624, 630 (Tenn. 2000)).  "'[A] void judgment is one in which the judgment is facially invalid because the court lacked jurisdiction or authority to render the judgment or because the defendant's sentence has expired.'" *Hickman*, 153 S.W.3d at 20 (quoting *Ritchie*, 20 S.W.3d at 630).  In contrast, a voidable judgment "'is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity.'" *Hickman,* 153 S.W.3d at 20

---

[19]  In addition to petitioner's fundamental-miscarriage-of-justice argument being waived, it is doubtful that a "reasonable juror" would have concluded that the circumstances of the stop – which occurred later in time and at a distance from where the crime was committed – would have trumped the victim's testimony that petitioner was the person who robbed her.

(quoting *Ritchie*, 20 S.W.3d at 633)). "'[I]n all cases where a petitioner must introduce proof beyond the record to establish the invalidity of his conviction, that conviction by definition is merely voidable, and a Tennessee court cannot issue the writ of habeas corpus under such circumstances.'" *Hickman*, 153 S.W.3d at 24 (quoting *Ritchie*, 20, S.W.3d at 633).

As previously explained at above at pp. 11-12, the third state *habeas* court dismissed petitioner's application for want of jurisdiction or authority to grant petitioner's demand for relief. Because the state *habeas* court lacked jurisdiction or authority to grant the relief demanded, the claim was not "fairly presented" for federal *habeas* exhaustion purposes. For these reasons, this claim was not exhausted in a state court of competent jurisdiction, and now it is procedurally defaulted.[20]

As for cause and prejudice, as previously established at pp. 8-9, petitioner waived his right to pursue a direct appeal, and he never sought to rescind that waiver. Defense counsel also argued the identification procedure at issue during the March 7, 2003 suppression hearing. (Doc. 1-2, pp. 30-86 of 138) Consequently, petitioner cannot show that his failure to appeal this claim in a court of competent jurisdiction was due to factors external to the defense, or interference by state officials. Because petitioner cannot establish the first half of the two-part cause-and-prejudice test, it is unnecessary to address the prejudice half of test.

In addition to not satisfying the two-part cause-and-prejudice test, petitioner also has not shown that a fundamental miscarriage of justice will occur if the district court does not review this

---

[20] In addition to not having "fairly presented" this issue in a Tennessee court of competent jurisdictions, the record shows that petitioner argued the merits of this claim in his third *habe* solely on state grounds. (Doc. 8-10, pp. 24-31 of 69) Although petitioner avers – generally – in this proceeding that "the United States Supreme Court and the Tennessee Supreme Court have condemned the use of Show-ups" (Doc. 71, p. 25 of 26), petitioner's actual argument before this court is couched in solely terms of Tennessee law. Thus, even if the district court were to review this claim, it would be subject to dismissal on the merits because it fails to allege and show that petitioner is in custody in violation of the Constitution and/or laws of the United States.

claim.  Here too petitioner makes no effort to explain why the circumstances of the identification procedure would establish that he was actually innocent of the offense.  Consequently, for reasons previously explained above at p. 17 n. 13, this argument is waived.[21]  Because petitioner has failed to demonstrate actual innocence by clear and convincing evidence, he fails to show that a fundamental miscarriage of justice would occur were the court not to review this claim.

This claim should be denied for the reasons explained above.  Should petitioner file a notice of appeal as to this claim, a COA should not issue because jurists of reason would not debate whether the district court was correct its ruling.

### 3.  Petitioner's Right to Present a Defense Denied
### (Doc. 71, pp. 29-31 of 56)

Petitioner argues that the trial court denied his constitutional right to defend against the charge that he was in possession of a weapon when he was stopped after the robbery.  Petitioner asserts that Mike Moser, a reporter, would have testified that no weapon was found in petitioner's vehicle when he was stopped.

Petitioner raised this ground for relief in his third state *habe* which, as noted above pp. 11-12, failed to state a cognizable *habeas* claim under Tennessee law.  Because petitioner did not raise this claim in a court of competent jurisdiction, it is both unexhausted and now procedurally defaulted.

As for cause and prejudice, as previously noted above at pp. 8-9, petitioner waived his right to pursue a direct appeal, and he never sought to rescind that waiver.  The record also shows that defense counsel raised the question of Mr. Moser's testimony in a jury-out hearing at trial.  (Doc. 8-7, pp. 46-49 of 116)  Mr. Moser testified that the newspaper article he wrote was based "entirely [on] what [he] w[as] told from others . . . ."  (Doc. 8-7, p. 47-49 of 116)  Judge Burns ruled that Mr.

---

[21]  Here too it is doubtful that a "reasonable juror" would have concluded that the circumstances of the identification procedure would have trumped the victim's testimony that petitioner was the person who robbed her.

Moser's testimony was hearsay and, therefore, not admissible.[22]  (Doc. 8-7, p. 49 of 116)  Once again, petitioner cannot show that his failure to appeal this claim was due to factors external to the defense, or interference by state officials.  Because petitioner cannot establish the first half of the two-part cause-and-prejudice test, it is unnecessary to address the prejudice half of test.

In addition to not satisfying the two-part cause-and-prejudice test, petitioner also has not shown that a fundamental miscarriage of justice would occur if the district court does not review this claim.  Specifically, petitioner once again makes no effort to explain why the circumstances of the identification procedure would establish that he was actually innocent of the offense.  Consequently, as explained above at p. 17 n. 13, this argument is waived.[23]

This claim should be denied for the reasons explained above.  Should petitioner file a notice of appeal as to this claim, a COA should not issue because jurists of reason would not debate whether the district court was correct its ruling.

### 4.  Ineffective Assistance of Trial Counsel
### (Doc. 71, pp. 32-35 of 56)

Petitioner asserts that he was denied his constitutional right to effective assistance of counsel at trial.  Petitioner alleges, *inter alia*, that defense counsel failed to call witnesses and to obtain investigative assistance.

---

[22]  Hearsay is defined in Tennessee as "a statement, other than one made by the declarant while testifying at th trial or hearing, offered in evidence to prove the truth of the matter asserted. Rule 801(c), Tenn. R. Evid.  Hearsay is inadmissible except as provided by the hearsay rules.  Rule 802, Tenn. R. Evid.  Mr. Moser's proposed testimony, based on information provided to him by law enforcement officials, is not one of the exceptions to the hearsay rule.  Rule 803, Tenn. R. Evid.  Therefore, Judge Burns' decision to suppress Mr. Moser's testimony as hearsay was correct.  Even if the correctness of Judge Burn's hearsay ruling were at issue, federal *habeas* courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Henness v. Bagley*, 644 F.3d 308, 326 (6th Cir. 2011)(citing *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)).  Therefore, even if this claim were exhausted, the court would be bound by Judge Burn's ruling.

[23]  Here too it is doubtful that a "reasonable juror" would have concluded that the alleged circumstances of the identification procedure would have trumped the victim's testimony that petitioner was the person who robbed her.

As noted above at p. 8, petitioner sought to "fire" defense counsel at the sentencing hearing, and Judge Burns permitted trial counsel to withdraw from his representation at that hearing. Therefore, although not the norm, petitioner could have raised an ineffective assistance claim on direct appeal. However, as previously established above at pp. 8-9, petitioner waived his right to appeal, and he never sought to rescind that waiver.

Having waived his right to appeal, petitioner still had the more conventional approach available to him of raising his ineffective assistance claim pursuant to the Tennessee post-conviction statute, under which petitioner had one year from the date judgement became final to file, *i.e.*, until December 20, 2006.[24] Petitioner did not raise his ineffective assistance claim on post-conviction, and he offers no reason in these proceedings why he did not. Indeed there is no mention whatsoever of petitioner's post-conviction rights in his amended petition, memorandum, or traverse *vis-a-vis* his ineffective assistance claim.

Petitioner did raise this claim in his first state *habe*. As previously noted above at p. 10, Judge Beal ruled that petitioner had stated a colorable post-conviction claim of ineffective assistance of counsel. Judge Beal did not rule that petitioner *had* received ineffective assistance of counsel –

---

[24] The relevant portion of the Tennessee Post-Conviction Statute, Tenn. Code Ann. § 40-30-102, provides the following with respect to the time limits for filing a petition for post-conviction relief:

> Except as provided in subsections (b) and (c), a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.

only that petitioner had stated a "colorable claim." For reasons previously explained above at pp. 10-11, Judge Beal did not have jurisdiction or the authority to make such a determination because ineffective assistance does not constitute grounds for state *habeas* relief. Because petitioner did not pursue this claim either on direct appeal or post-conviction, and because the first state *habe* court lacked jurisdiction or authority to grant petitioner relief on his ineffective assistance claim, this claim is unexhausted and now procedurally defaulted.

As for cause and prejudice to excuse the default, the petitioner cannot show "cause" for his failure to exhaust his ineffective assistance claim. As discussed above, petitioner demanded to "fire" defense counsel at the sentencing hearing, clear evidence that petitioner was on notice that he had an ineffective assistance claim. Moreover, in a letter dated May 31, 2006 from attorney Nathan Whittle to petitioner, Mr. Whittle writes about his "investigation into the possibility of filing for post conviction relief on [petitioner's] behalf." (Docs. 1-1, p. 11 of 55; 71-1 p. 9 of 57) This letter shows that petitioner was aware of his post-conviction rights not later than 6-plus months prior to the post-conviction statute of limitations running. In short, petitioner sat on his rights. Because petitioner cannot establish the first half of the two-part cause-and-prejudice test, it is unnecessary to address the prejudice half of test.

Petitioner argues that a miscarriage of justice will occur if the district court does not consider this claim because, had defense counsel investigated his background in music, he would have learned that he had a history of recording albums, that his records sold well in different stores throughout the region, that he was respected for his work, that there were "recording deals (by large corporation and labels) . . . on the table" at the time he was arrested, that he "was friends with or related to . . . numerous recording artists . . . as well as actors and actresses" who would have provided whatever monetary assistance he needed." (Doc. 71, pp. 34-35 of 56) Petitioner's lack-of-

motive argument is not supported by his testimony at the sentencing hearing that he owned no property, had no assets, and that his family had to help him employ defense counsel. (Doc. 8-7, p. 109 of 116)

In addition to the foregoing, petitioner cannot show that a miscarriage of justice will occur if the district court does not consider this claim. More particularly, there is nothing inherent in an ineffective assistance claim that goes to the question of actual innocence, *i.e.*, defense counsel's alleged ineffectiveness would not have been before the jury and, therefore, would not have been part the jury's guilt-innocence deliberations. Because petitioner cannot demonstrate actual innocence by clear and convincing evidence, he fails to show that a fundamental miscarriage of justice would occur were the court not to review this claim.

This claim should be denied for the reasons explained above. Should petitioner file a notice of appeal as to this claim, a COA should not issue because jurists of reason would not debate whether the district court was correct its ruling.

### 5. Sentence Enhancement Based Facts Not Charged to and Found by a Jury (Doc 71, pp. 36-44 of 56)

Petitioner asserts that his sentence was enhanced in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny. Petitioner argues that his sentence violated *Apprendi* because Judge Burns enhanced his sentence based on the following judicially determined factors: more than one victim, and a 1997 theft charge.

Petitioner raised this claim in his third state *habe* which, for reasons already explained above at pp. 11-12, lacked jurisdiction or authority to grant the relief requested. Because petitioner failed to raise this claim in a court of competent jurisdiction, this claim is both unexhausted and now procedurally defaulted for reasons previously explained.

As for cause and prejudice, as previously noted above at pp. 8-9, petitioner waived his right to pursue a direct appeal, and he never rescinded that waiver. Consequently, petitioner cannot show that his failure to raise this claim on direct appeal was due to factors external to the defense, or interference by state officials. Because petitioner cannot establish the first half of the two-part cause-and-prejudice test, it is unnecessary to address the prejudice half of test. Moreover, petitioner cannot show that a fundamental miscarriage of justice will result if the district court does not review this claim, because what transpired during the sentencing hearing was not before the jury and, therefore, not part the jury's guilt-innocence calculus.

This claim should be denied for the reasons stated above. Should petitioner file a notice of appeal as to this claim, a COA should not issue because jurists of reason would not debate whether the district court was correct in its ruling.

### 6. Void Judgment and Order to Issue *Capias* (Doc. 71, pp. 44-50 of 50)

Petitioner asserts that Judge Burns entered judgment and the order of *capias* in violation of his constitutional rights. This claim is the only claim that petitioner exhausted in the state courts, *i.e.*, it was the only claim raised by petitioner that was cognizable in a state *habeas* proceeding.

Jurisdiction and the authority of state courts are the exclusive domain of the state. Judge Easter held during the third *habe* that it was within Judge Burn's jurisdiction and authority to enter judgment against petitioner on December 16, 2005, and Judge Easter's ruling was affirmed by the CCA on appeal. Notwithstanding petitioner's arguments to the contrary, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). As previously noted above at p. 30 n. 22, federal *habeas* courts must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition. Because the state courts determined that Judge Burns retained jurisdiction in petitioner's case, this court is bound by that

determination as well as the determination that Judge Burns retained the authority to issue *capias*.

This claim should be denied for the reasons stated above. Should petitioner file a notice of appeal on this claim, a COA should not issue because jurists of reason would not debate whether the district court was correct in its ruling.

### 7. Jail Credit Denied in Violation of Due Process
### (Doc. 71, pp. 51-54 of 56)

Petitioner alleges that he has been denied jail credit in violation of his constitutional rights. Petitioner argued this ground in his third *habe* solely in terms of Tennessee case law and statutes. He made no reference whatsoever to the United States Constitution, federal statutes, or federal case law. In the instant action, however, petitioner tries to cloak his claim in a federal context with vague references to due process and *Preiser v. Rodriguez*, 411 U.S. 475 (1973).[25] (Doc. 71, p. 51 of 56)

To the extent that petitioner raised this claim in the state *habeas corpus* court solely on state law grounds, but now attempts to couch it in federal terms by making vague reference to due process and *Preiser* the issue in the state *habe* and that in the instant action is not the same. Consequently, the claim has not been exhausted for reasons explained above at pp. 24-25 and, as such, it is now procedurally defaulted.

Petitioner also makes no effort to show cause and prejudice. Consequently, as explained above at p. 17 n. 13, any argument to that end is waived. Neither is this ground for relief amenable to a claim of actual innocence because the matter at issue would not have been presented to the jury. Therefore, the substance of the claim would not have been taken into consideration in determining guilt or innocence. Finally, to the extent that petitioner argues the actual merits of his claim in terms

---

[25] The holding in *Preiser* is very limited: it holds that federal *habeas* relief is a prisoner's sole remedy when challenging the fact or duration of confinement, and that the federal habeas corpus exhaustion requirement applies to such claims. In other words, *Preiser* establishes that petitioner's petition for *habeas* relief on the grounds asserted is proper – nothing more.

of state law in both his second *habe* and the instant proceedings, petitioner fails to allege and show that he is imprisoned in violation of the constitution and/or laws of the United States.

This ground for relief should be denied for the reasons stated above. Should petitioner file a notice of appeal, a COA should not issue because jurists of reason would not debate whether the district court was correct in its ruling.

### 8. Sentence Miscalculated in Violation of Due Process
### (Doc. 71, pp. 55-56 of 56)

Petitioner asserts that his sentence has been miscalculated in violation of his constitutional rights. Petitioner also argues that "the trial court's failure to address this matter for monetary reasons denied him . . . equal protection of the laws." (Doc. 71, p. 55 of 56) Plaintiff's reference to the state court's alleged failure to address his sentencing calculation claim for "monetary reasons" suggests that petitioner is referring to his January 25, 2016 petition for declaratory judgment in the Davidson County Circuit Court.

Petitioner does not assert, nor can it be determined from the record, whether he attempted to appeal the Circuit Court's apparent refusal to file the petition for want of having failed to pay past fees and charges due. Unless and until petitioner appeals the Circuit Court's apparent refusal to file the petition for "monetary reasons," petitioner has not exhausted the claim that his sentence has been miscalculated.

Notwithstanding the foregoing, 28 U.S.C. §2254(b)(1)(B) provides an exception to the exhaustion requirement when "circumstances exist that render such process ineffective to protect the rights of the applicant." However, petitioner bears the burden to demonstrate that compliance with the exhaustion requirement or that the state procedure would be futile. *See Rust*, 17 F.3d at 160; *see also Sullivan v. Perry*, 2017 WL 25496 * 1 (M.D. Tenn. 2016)(Sharp, CJ); *Bostic v. Thomas*, 2016 WL 4177103 (M.D. Tenn. 2016)(Campbell, J); *Taylor v. Tennessee*, 2015 WL

4042203 * 1 (M.D. Tenn. 2015)(Nixon, J); *Short v. Donahue*, 2015 WL 1413383 * 1 (M.D. Tenn. 2015)(Sharp, CJ); *Logan v. Tennessee*, 2014 WL 2197026 * 1 (M.D. Tenn. 2014)(Trauger, J); *Blackman v. Jobe*, 2010 WL 5441968 * 2 (M.D. Tenn. 2010)(Trauger, J); *Bass v. Easterling*, 2010 WL 3075295 *2 (M.D. Tenn. 2010)(Campbell, J). To satisfy that burden, petitioner must allege and show that he sought to appeal the Circuit Court's apparent refusal to file his petition, and that the appellate court declined to consider his appeal for the same reason that the lower court declined to file it, or that the appellate court accepted the appeal but affirmed the lower court's decision. Because petitioner has not satisfied his burden to establish futility, this claim remains subject to the AEDPA's exhaustion requirement.

This ground for relief should be denied for the reasons stated above.[26] Should petitioner file a notice of appeal, a COA should not issue because jurists of reason would not debate whether the district court was correct in its ruling.

## IV. RECOMMENDATIONS

The Magistrate Judge **RECOMMENDS** for the reasons explained above that:

1) the requirement in the order of referral (Doc. 11) to conduct an evidentiary hearing be **RESCINDED** because an evidentiary hearing is unnecessary;

2) respondent's motion to dismiss (Doc. 6) be **GRANTED**;

3) petitioner's amended petition under 28 U.S.C. § 2254 (Doc. 70) be **DENIED**;

---

[26] The Magistrate Judge is aware of the Supreme Court's stay-in-abeyance procedure announced in *Rhines v. Weber*, 544 U.S. 269, 275-79 (2005)(the district court may stay and hold a timely-filed habeas corpus petition to permit the petitioner to return to state court to exhaust unexhausted claims). Holding the present action in abeyance to permit petitioner to exhaust this claim in state court is not warranted for two reasons. First, for reasons previously explained, petitioner did not timely file this action. Second, even if the petition were timely filed, petitioner would not be prejudiced by summary denial and dismissal of this claim. Section 2254 provides state prisoners the means to challenge the constitutionality or legality of their sentence. On the other hand, 28 U.S.C. § 2241 is used to challenge the manner in which prisoners are serving their sentence.

4)      this action be **DISMISSED WITH PREJUDICE**;

5)      acceptance and adoption of this R&R constitute the **FINAL JUDGMENT** in this action;

6)      any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3);

7       should the petitioner file a timely notice of appeal, that such notice be docketed as both a notice of appeal and a COA, 28 U.S.C. § 2253(c); Rule 22(b), Fed. R. App. P.; *see Slack*, 529 U.S. at 483, which **SHOULD NOT ISSUE** because jurists of reason would not debate whether the district court was correct in its procedural ruling, *see Castro*, 310 F.3d at 901-02 (citing *Lyons*, 105 F.3d at 1072);

8)      any pending motions be **TERMINATED AS MOOT**.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein.  A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal.  *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this the 31st day of January, 2017.


/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge

38